And we'll take up our next matter, which is Salvatore Cappetta v. Social Security Administration Commissioner. Good morning, Your Honors. May it please the Court? My name is Edward Wicklin. I'm representing Mr. Cappetta in the civil monetary penalty case assessed against him. But first, I'd like one preliminary matter. In our reply brief, we actually had the wrong position of the ALJ, who does work for the Department of Appeals Board and not SSA. But regardless... Just a second. The ALJ... I don't understand your point. What's the point you're making about who he works for? Well, so the ALJ, we had it wrong in our reply brief, saying he worked for the SSA. He, in fact, works for the Department of Appeals Board. The DAB. The DAB. That's important for the assessment against Chevron. But we believe that the ALJ made the correct ruling in this case twice, and the DAB got it wrong. This case comes down to essentially an interplay of statutes between the Social Security Administration and the imposition of civil monetary penalty. Can I just jump to another issue? I know there's a lot of complicated legal issues here about establishing a disability and then work activity and how they work together and Chevron deference and all this stuff. But I was more curious about the reasonableness determination for the fine and the assessment, which the DAB in the second time rejected and determined itself. And I spent some time looking at that. And then the ALJ's determination of reasonableness. Was it ever calculated how much he earned over these years from this under-the-table work? No, Your Honor. There was no calculation whatsoever. It was never proven by anybody. There's essentially no evidence whatsoever provided that shows the amount of work he performed. And, in fact, if we take the ALJ's credibility findings, the work seems rather de minimis, rather small. Handing stuff to Mr. Cameron, going out and making donut runs, coffee runs, and the like. So the assessment of $106,000 plus the $47,000 to us is highly unreasonable and not the purpose of this law. And I think this would prohibit people who have had our 24-month disability insurance recipients to be afraid to do anything. Essentially, this report would require somebody going out and picking up cans for money to report that activity. And if they failed to report it, then they would be assessed a penalty for each single month where they were working. The gentleman made no affirmative statements that he wasn't working. He just kept collecting the checks. That was the basis for the calculation of the number of months, 53 months, right? Right. Correct. He was collecting checks. And it's the government's position that each month constitutes a separate violation. But at the same time, when you're collecting those checks, you're not really affirming anything. So in this respect, whether he knew whether that would be misleading just to collect checks and do minimal work over that time is very odd to impose a penalty. And the $47,000 is the amount of benefits that he received during that period, right? Correct. And that would depend on a finding that he was not, in fact, eligible for those benefits, wouldn't it? I believe so. There's no determination whatsoever that he was not disabled through the period. And there's no determination that he engaged in, what is the catchphrase, substantial gainful activity. Yes. There is nothing that says he engaged in substantial gainful activity. What the commissioner is trying to impose, essentially, is an incredibly strict ruling that he has to report any and all work activity. And I think what the ALJ is saying, by pointing out that provision 421M, he's saying that it's not material. You can't use work activity to deny benefits. And the definition of materiality is a statement that can be used to get benefits. So if you can't use work activity to deny benefits, it doesn't make sense. Well, the problem is the statute doesn't make sense, right? Which implies that the person worked. So it kind of goes both ways on that. And the definition of materiality in general in the law is pretty broad. Right. But, I mean, let's get back to the amounts again. With respect to the $106,000, suppose we decided that, and I know that you would say we shouldn't, suppose we decided that it is correct that he is responsible for material omissions through 53 months. And then I guess it would be clear that it's legally available to give as much as $2,000 a month. My next question then would be, if we get to that point, do we have the authority to just assess the general reasonableness of the determination that that should be the fine? I think if you get to that point, you'd probably have to send it back to the fact finder to determine what months and when he was working. You know, we have no basis as to when he was working. It's just an assumption. And it's a very broad one, considering what was accepted by the DAB and the ALJ's credibility findings as to his amount of work. I mean, his own supposed employer said he was never an employee. Oh, I see. So one of your points is, if there was a period of 53 months during which he perhaps worked intermittently, the material omission to report would occur only during those months during which he did engage in work, at most, again, assuming away your other arguments. Yeah, at most. That would be our position, because it's seemingly unfair just to assume without anything in the record whatsoever, proving earnings, proving finances, proving anything, that he was working through that time at a substantial amount. And that's a finding the DAB makes, that he was working a substantial amount. But the ALJ clearly didn't find that, yet the DAB accepted the ALJ's credibility findings. So it's very unclear on that point. Am I right, too, that after all of this, in 2012, the Social Security Administration found him disabled again? Yes, they did. After all of this back and forth between the ALJ twice and the DAB, they still said that he wasn't engaged in substantial gainful activity. Right. That's the standard. Right, exactly. And then I believe what happened after that is the OIG tried to report him to the U.S. Attorney's Office for criminal prosecution, and they declined. I think that's what happened. So at the end of the day, there's no proof that he was ever working at substantial gainful activity. That's not in the record, though, right? Is it in the record of the U.S. Attorney's Office? Yeah, yeah. It is in the record, I forget exactly where, that they did report him for criminal prosecution, which the U.S. Attorney's Office declined to take to criminal court. But was that related to the question I just asked you about the – let me just finish my question, okay? Was that related to the subsequent determination again in 2012 that he had no substantial gainful activity? Oh, no, no. He – no, that was not related. He was disabled and SGA was satisfied. Right, yes. So he had no substantial gainful activity again. So he has never been proven to have any substantial gainful activity throughout, and that's sort of our point, that without substantial gainful activity, any work activity is not material regardless. Well, but, I mean, the problem is materiality. To take a simpler case, suppose Mr. Capetta had made deliberate false statements about what he was doing. You judge the materiality as of that point. You don't say, well, at the end of the day, after we did an investigation, we determined that it didn't matter, it was all okay. If he lies about something that might lead to that investigation taking place, that could be material, right? I suppose it could be, but he didn't know essentially that it would be material. He didn't – he wouldn't have known that it was material just doing those minimal things is our point. Yeah, I see. Anything else you had to say?  Thank you. Nothing further. Thank you. Thank you. Good morning. I'm Natalie Elliker, Assistant United States Attorney for the Commissioner of Social Security. I wanted to address first Judge Joni's question about the fact that Mr. Capetta was eventually – they had denied him benefits, but then they were – he was determined medically disabled. So he achieved the medical determination. I'm not confident, and I don't think the record is clear. Frankly, it's sort of – it was peripheral to the CMP decision, whether he had engaged in substantial gainful activity and was nevertheless eligible for the continued receipt of benefits. So we have to assume he was, though, right? You may. You may. I think it's one of the things you have to tick off before you can get the check for disability is that you weren't engaged in substantial gainful activity. However, he – an overpayment had been posted to his account at that point, and so he did not later receive benefits. So I'm just saying I'm not confident. He didn't receive the check. Was there an offset? In other words, if he has this account, and then presumably every check that he does not get because he owes the government money gets credited against that account, right? That's correct. And that happened here. Well, yes. So he did get benefits. He just didn't get the money in his pocket. But the – and it's like if I owe a debt to somebody and I work for them and they pay me, but then they don't actually give me the check because they credit it against my account, I've gotten income. I've gotten benefits. They paid me, right? So you're – in other words, you're not contending here that there is no evidence that at the end of the day Mr. Capetto was found by the Social Security Administration not just to have a medical disability, but to be entitled to and to actually receive benefits even if he didn't get the cash in his hand. As of 2012. Right. So the reason is in 2012 there's no evidence that he is then engaging in substantial gainful activity. The evidence in the record, as the ALJ found, is that his work ceased in 2009 and that he withheld disclosure of that information through 2011. But that's different from FGA. I mean, there was never a determination through – however, 1997, is that when he started? For 15 years there was never a determination by the Social Security Administration that he was engaged in substantial gainful activity. There were determinations he was engaged in work. Right? Am I clear about that? That is correct. The ALJ did not find – found that there was not sufficient evidence in the record to establish that there had been substantial gainful activity during the relevant years. However. Well, if that's so, how can you defend the $47,000 assessment, which turns on how many benefits he received that he was not entitled to? Not that he – you know, there should have been an investigation and he put that investigation away by not disclosing things. Wouldn't it be required to show that that misstatement by him caused him to receive these benefits? The critical problem there is that Mr. Capetta actually did not contest, and there is under the penalty statute, issue exhaustion is required. And Mr. Capetta never contested at the administrative law judge hearing nor at the DAB level that there was any particular month in which he – he didn't specify in his showing. Right? He argued generally, I never worked. But the ALJ decided that that was not credible testimony. Instead, Mr. Capetta's – in other words, Mr. Capetta's defense wasn't specific  He didn't say – He didn't argue that because I did not engage in substantial gainful activity, there is no causation of loss to the government. That argument you're saying he did not make? He did – Mr. Capetta did not make any showing to the ALJ that there was any particular month in which – No, that's a different question. That's the question of does he have to – does it have to be broken down month by month. But I'm asking the more fundamental question. Was there ever any – did he raise the issue, and I take it from the care with which you're answering that the answer may be he did raise the issue, that he – there's no causation shown as to any actual loss to the government, and therefore there should be no assessment. I'm sorry. The care with which I'm answering your question is that I was having trouble understanding it. I was trying to process. Yeah. If I could back up for a moment because I can tell there is concern about the fact that there was not evidence of substantial gainful activity. The Social Security Regulations 404.1588, which is part of the Title II implementing regulations, tells disability beneficiaries that they are required to report their earnings, changes in their work activity – Right. But most of the questions we're asking you are not about whether he violated the law by not disclosing things. We're focused on the penalties in many of these questions. And the question I continue to ask you is, is it not the case that the assessment is really a measure of damages to the government and depends on a finding that these are benefits to which he was not entitled, which in turn would depend not just on whether he was truthful, but on whether he engaged in substantial gainful activity or not? Yes. And there – I think it's been established that there was never a finding that he did. And my next question was, are you contending that that argument was somehow waived because Mr. Capetta never argued that whatever else was true, he never caused any loss to the government? Yes. You are saying that was waived? I am saying that Mr. Capetta waived this argument. Both the ALJ and the DAB recognize that he did not contest the $47,000 of benefits. And what is the government's position on whether it is open to us to assess the reasonableness of a $2,000 times 53-month fine? This court, respectively, if the court was not satisfied that the penalty was reasonable, the proper course is to vacate and remand to the commissioner. But we do have the authority to assess whether we thought it was reasonable or not. Well, your authority is to review questions of law de novo and findings of fact under an arbitrary and capricious standard. So the DAB did make findings about reasonableness based on findings of fact. However, I suppose the waiver argument is a legal one, and this court would be able to review that de novo. The DAB made its own determination of reasonableness rather than send it back a third time, right? But the DAB had no testimony before it, so it was based on the record that was before the ALJ. Is that right? Correct. Now, I want to emphasize where I was trying to get to before, and I'm not getting there very directly, but any failures of proof by the Social Security Administration in this case are caused by the fact that Mr. Capetto withheld evidence for over eight years. So part of the reason that Social Security under 1588 requires disclosure all along the way is that they have the ability, in fact, in retrospect to say you were overpaid, and we're going to assess an overpayment going back three years. Now, if a disability beneficiary discloses this information to the government, surely they make themselves vulnerable to the fact that an overpayment can be found. But by telling Social Security what they saved themselves from is the possibility of being assessed a civil monetary penalty for withholding the information. So absolutely, the reason the CMP is structured the way that it is is to induce beneficiaries to report. Even when they don't think idiosyncratically that it's material or that it's important, they have to tell Social Security. Mr. Capetto was aware of this, and that's obvious from his own admission, but also the testimony of Mr. Cameron where he said, Mr. Capetto told me that he could work as long as he kept his dollars under a certain value. Now, that may actually be true, that he would have been eligible to continue receiving benefits as long as he didn't earn at the Social Security level. But is it really up to Mr. Capetto to make that decision? The Social Security regulations say, no, you're required to tell us regardless, and that gives us the proper information to perhaps investigate further. So if Mr. Capetto had told them I'm working sporadically, they could have perhaps then, with that information, maybe they would have gone and done an investigation into what his actual earnings were. You know, Jay said that the evidence does not show, it was more likely than not, that a respondent engaged in any more than sporadic work activity for Peter Cameron or his company. I mean, that's consistent with what Cameron said. He was kind of a gopher at times for him, right? I mean, and then if you add to that, in 2012, the Social Security Administration said, you know, he's still disabled. How do you conclude that what he did for those many months was really substantial, other than going to get donuts and filling up the truck and, you know, that kind of thing? Well, one thing, Your Honor, that's important to keep in mind, and this wasn't laid out in explicit detail in our briefing, so if I could have you for a moment. For a 24-month beneficiary such as Mr. Capetto, he's permitted, as are all Social Security disability beneficiaries, a nine-month trial work period. After the end of that, he enters a 36-month re-entitlement period, which is essentially a benefit to the beneficiary because they can get more benefits without having to reapply. Now, during the 36-month re-entitlement period, the first month in which a beneficiary is found to have gauged in substantial gainful activity, they are found no longer disabled. In the following months, if the beneficiary says, well, I'm no longer earning at the substantial gainful activity level, now I'm earning below that, that person for that month is entitled to benefits. However, at that point, Social Security can look at the work activity that's behind the earnings. The reason that's vitally important is that if a person, for example, works for a small family company and has control over the amount of money that they earn, then Social Security doesn't only look at the reported earnings, they look at the value of the work in the economy. So the question is, you know, Mr. Capetta reported that he only got $20 for running to go get cigarettes, but in the national economy, what was that work actually worth? That's all that he got. But the other thing that he did, Mr. Capetta received in-kind work on his own home, and we don't know what the value of that was. What Social Security would do under these circumstances is, again, look at the work that Mr. Capetta did for Mr. Cameron and say, leaving aside the earnings that he actually reported, what is this work worth? I mean, you say he had a pool installed and I think an addition. Couldn't you send somebody out at least to say, look, the value of the pool is, you know, Cameron said he put the pool in for free and a pool is worth $12,000. Cameron said he put an addition on the house for free because Capetta had done all this work for him. We think it's worth like $30,000. But there was nothing like that, right? Well, that's not actually the inquiry that Social Security would do. They don't look at the value of the in-kind work received. What they do is say we're aware that in-kind work was or rather in-kind payment was received, so now let's analyze the work activity that was done and see what its value was. That value might not be consistent with what the value of the pool was. But what Social Security is looking at is, and by the way, when they look at the other information, and this is laid out in 1574b2, little Roman two, they look at other information about work activity. They look not only at this first question of what is the work actually worth, but they can also analyze if you engage that work activity, does it show that you could have engaged in substantial gainful activity in the economy? And also, is there an indication? Sorry, I'm forgetting that. They look at the work activity in order to determine whether you had control over your earnings, but also what you're capable of doing. So if you were raising, if you were lifting 50-pound bags of flour, they can look at that and say it looks to us like you engage in activities of daily living that are consistent with being able to do substantial gainful activity. Thank you. Thank you, unless Your Honor has further questions. We ask you to affirm the penalty and assessment as ordered. Thank you. And Mr. Wicklund, you have two minutes. Just a quick rebuttal, Your Honors. At the end of the day, Mr. Capetta, the proof is that he engaged in de minimis work. So to impose a civil monetary penalty upon him, he has to know whether reporting that would be misleading. In our opinion, it's not misleading. He was, like you said, a gopher. There is nothing there proving substantial gainful activity. This is essentially no evidence in the file that has any evidence of earnings or anything. The testimony of his employer said he was an employee, he just did a few things. This is an incredibly harsh penalty for little proof. And with that, I'll close. Thank you. We'll reserve decision.